A. E. JOHNSON *vs*. WALTER B. RUMSEY.

December 23, 1881.

<table>
<tr><td>28</td><td>531</td></tr>
<tr><td>82</td><td>222</td></tr>
</table>

**Novation—Construction of Complaint.**—The complaint in this action considered, and construed as alleging, in substance, that one Tyrer was the original debtor of plaintiff, but that subsequently there was a novation of parties, whereby, by accession and agreement of all parties interested, the debt of Tyrer was extinguished, and defendant, for a valuable consideration, assumed the debt as his own.

**Same—Evidence held Insufficient.**—The evidence considered, and *held*, that it does not show any novation of parties, or that the debt of Tyrer was ever extinguished, or that there was any consideration for the alleged promise of defendant to plaintiff to pay the debt. Hence, that any such promise, if made, was void, as being without consideration.

Appeal by defendant from an order of the district court for Freeborn county, *Farmer*, J., presiding, refusing a new trial.

*Lovely & Morgan*, for appellant.

*John Whytock*, for respondent, cited, *Yale* v. *Edgerton*, 14 Minn. 194; *Perkins* v. *Hinsdale*, 97 Mass. 157; *Glidden* v. *Child*, 122 Mass. 433; *Vogel* v. *Melms*, 31 Wis. 306; *White* v. *Solomonsky*, 30 Md. 585; *Booth* v. *Eighmie*, 60 N. Y. 238.

MITCHELL, J. The allegations of the complaint, so far as here material, are that one Tyrer drew his draft or cheque upon plaintiff for $250, which plaintiff honored and paid to Tyrer; that it was

agreed between plaintiff, defendant, and Tyrer that this amount should be charged to defendant, who, in consideration of the payment of the money to Tyrer, agreed to repay the plaintiff, who, in consideration of such agreement, discharged Tyrer. The defendant, in his answer, denies all the allegations of the complaint in anywise referring to himself. Upon the trial, the plaintiff introduced evidence tending to prove that Tyrer drew his cheque on him for $250, which he paid; that he understood from Tyrer that it was to be charged to defendant, but that he did not make any charge upon his books, but simply held Tyrer's cheque, until some four months afterwards, when, upon seeing defendant, he told him that Tyrer had drawn his cheque on him for $250, and informed him that it was to be charged to the account of defendant, and asked him (defendant) if it was all right, to which defendant responded in the affirmative, and that plaintiff could charge it to him; that thereupon plaintiff charged the amount on his books to defendant. The cheque was never returned to Tyrer. Plaintiff, defendant and Tyrer never had any conversation together upon the subject, nor does it appear that Tyrer was ever informed of the interview between plaintiff and defendant, or that he was ever spoken to regarding the cheque after the money was paid to him, at least until after the commencement of this action. Plaintiff testifies that he had a second interview with defendant, in which the latter promised to pay. This was substantially all the evidence produced by plaintiff to make out his cause of action. Defendant introduced evidence tending to rebut the evidence of the plaintiff. Upon this state of the evidence, the court, under the exception of defendant, instructed the jury that if they found that Tyrer drew this cheque on plaintiff, and, when he presented it for payment, informed plaintiff that it should be charged to defendant; and that plaintiff cashed the cheque and placed it in the cash drawer, and counted it as cash, until the following October, when he saw defendant; and that he then told him that Tyrer had drawn this cheque, requesting plaintiff to pay the same and charge it to him, (defendant,) and asked defendant if he should charge it up to his account; and that defendant replied, "All right, you can charge it to me;" and that plaintiff, pursuant to such authority, did charge it up to defendant, and discharged his claim

against Tyrer for the payment of such cheque, then it would be their duty to find a verdict for plaintiff.

Judging from the brief of counsel, it would seem that plaintiff himself is not entirely positive as to what theory to adopt as the ground of his right to recover. Under the evidence, perhaps either of two theories might be adopted: *First*, that Tyrer had authority from defendant to draw this money on his account, and that, from the inception of the transaction, Tyrer was never the debtor of plaintiff, but that defendant himself was the original debtor, and that his subsequent statements to plaintiff were not in the nature of contractual promises, creating a liability, but merely admissions, tending to prove the authority on the part of Tyrer, and hence an existing original liability on the part of defendant. The evidence might possibly tend to maintain this conclusion, if this had been the cause of action set up in the complaint, or the theory upon which the case was tried and submitted to the jury.

The second theory, and evidently the one upon which the complaint was framed, and upon which the cause was submitted, is that; by drawing his cheque and receiving the money, Tyrer was the original debtor of plaintiff, but that subsequently there was a novation of parties, when, by accession and agreement of all parties, the original debt of Tyrer was extinguished, and the promise of defendant accepted by plaintiff and Tyrer released. The pleader is not altogether fortunate in making clear the theory upon which he expects to recover, but taking the whole complaint together it seems to us that this is the only construction of which the complaint will fairly admit. He alleges that "thereupon the said plaintiff discharged Tyrer from said obligation, in consideration of said agreement." This certainly implies that theretofore the obligation had been Tyrer's, which would be inconsistent with the idea that defendant was the original debtor.

But the evidence is entirely insufficient to sustain the verdict upon this theory that Tyrer was the original debtor, and that there was a subsequent novation of parties. There was no consideration whatever for any such agreement. Tyrer never paid any consideration for any release. He was never consulted. If ever liable, he is equally so still. Defendant never received any consideration for assuming

such a liability, and plaintiff never paid or parted with anything of value in consideration of defendant's promise,—neither money nor cheque. True, he says he discharged Tyrer from the obligation, but the facts show that this must have been at most a mere mental operation, and that he never did any act or thing constituting, or going to constitute, a discharge of Tyrer. In short, there appears an utter lack of consideration for the promise of defendant, viewed as a promise to pay a debt of Tyrer, which, as we have said, is the theory of the complaint, and upon which the action was tried. The alleged promise of defendant would, therefore, on that theory of the case, be void, not only under the statute of frauds, but on general principles of law before we reach that statute, as being a promise without consideration.

Order reversed, and a new trial ordered.