The Montreal River Lumber Co. vs. Mihills and others.

See note to this case in 14 L. R. A. 361.— REP.

THE MONTREAL RIVER LUMBER COMPANY, Appellant, vs. MIHILLS and others, Respondents.

*October 28 — November 17, 1891.*

*Sale of lumber: False representations: Fraudulent intent: Damages: Special verdict.*

1. In an action for a balance due for lumber sold under a written contract, the defendants counterclaimed for damages because of plaintiff's fraudulent representations which induced them to enter into the contract. By a special verdict the jury found, among other things, that plaintiff's statement as to the amount of lumber in its yard when the contract was made was false, although it was an undisputed fact that such statement was true. They also found that plaintiff made false representations as to the amount or proportion of certain grades in the lumber in its yard, but did not find just what such representations were nor the true amount or proportion of such grades. They also found that plaintiff made false representations as to the quality of lumber which would be sawed from certain logs for defendants, but failed to find the difference between such representations and the actual facts. They assessed defendants' damages at $50,000, but it is impossible to tell from the findings how they reached that conclusion or what items constituted that sum, the trial court having refused to submit questions calling for separate findings as to the damages resulting from the several representations. Except as to one of the representations, no questions were submitted in answer to which the jury might have found that the representations were mere expressions of opinion; and as to that one representation the findings of the jury were inconsistent. *Held*, that the verdict was insufficient to sustain a judgment allowing defendants $50,000 on their counterclaim.

The Montreal River Lumber Co. vs. Mihills and others.

2. The plaintiff or its agents had the right to express in good faith an opinion as to the quality of the lumber in the yard or of that to be sawed thereafter.

3. False representations of facts, which have induced the making of a contract, may be actionable although not shown to have been made wilfully or with fraudulent intent. The decisions in *Bird v. Kleiner*, 41 Wis. 134; *Davis v. Nuzum*, 72 id. 439; *Cotzhausen v. Simon*, 47 id. 103, and other cases in this court, adhered to.

APPEAL from the Circuit Court for *Dane* County.

It is undisputed that during the times mentioned the plaintiff was a corporation at Hurley, Wis., and had a mill about three miles distant from that place, at Gile, which was completed in May, 1888, and also had a large quantity of pine timber lying upon the west branch of the Montreal river and on the Potato river, in the vicinity of said mill; that Alexander Stewart, of Wausau, was the treasurer of said corporation; that James McCrossin was the general manager of said corporation; that one Gilles was the book-keeper of said corporation, and one McAllister was the clerk and book-keeper of said corporation, during the times mentioned; that the defendants *Dorlon Mihills* and *Samuel Manson* formed a partnership in 1887, under the firm name of *Mihills & Manson*, and opened an office in Madison, for the purpose of buying at the mills and selling throughout the country, upon commission, lumber in car-load lots, keeping no yard of their own; that both were experienced in buying and handling lumber in large quantities; that in October, 1888, *Mihills & Manson* purchased of the plaintiff all of its manufacture of inch lumber, common and piece stuff, mill run, which had not been previously disposed of or used by the plaintiff, being 3,866,092 feet; that May 1, 1889, they still had on hand of that lumber 1,617,869 feet; that the plaintiff manufactured at said mill, between October 29, 1888, and March 29, 1889, about 6,000,000 feet of lumber, which was, at said last-mentioned date, piled in the yard at said mill; that about March 24, 1889, the said

*Mihills* and McCrossin commenced negotiations for the purchase of the lumber so in said yard, and certain other lumber then in logs and thereafter to be manufactured at said mill, and continued such negotiations until the making of the contract hereinafter mentioned; that April 6, 1889, the defendants *Wilder, Collins,* and *Ingraham,* of Evansville, entered into a copartnership under the firm name of *Wilder, Collins & Co.,* to endure for one year, for the purpose of joining with the firm of *Mihills & Manson* in said proposed purchase from the plaintiff; that the result of such negotiation was that April 10, 1889, the plaintiff, as party of the first part, entered into an agreement in writing with said two firms, as parties of the second part, for such purchase.

This action was commenced October 8, 1890, to recover $41,258.50, alleged to be the balance due the plaintiff for lumber sold and delivered by it to the defendants under and by virtue of said written contract, wherein and whereby the plaintiff sold to the defendants all the product of its said saw-mill at Gile, cut and to be cut from all the logs put in by it during the logging season of 1888–89, being about 18,000,000 feet, more or less, board measure. Said lumber and the mill product was thereby sold at the following list prices, to wit: All the lumber, including timbers, etc. (mill culls excepted), at $15 per 1,000 feet, board measure; mill culls, $5.15 per 1000 feet; star A star shingles, $2.10 per thousand; 5-inch clear shingles, so called, $1.16 per thousand; lath, $1.15 per thousand; No. 1 shingles, so called, 50 cents per thousand; flat pickets, select and clear, $8.50 per thousand; square pickets, select and clear, $8 per thousand; No. 2 pickets, flat and square, $6 per thousand,— all of the above in the rough, on cars at the mill yard at Gile, the defendants having the privilege of loading on the cars or bringing to the planing-mill the above product, in which case they were to receive remuneration as therein

specified. The plaintiff thereby agreed, in effect, to manufacture and put the above product in the pile in good, workman-like manner, and in the main as it had been doing theretofore; stipulated, however, that the defendants might give directions, from time to time, which were to be carried out so long as they did not damage the interests of the plaintiff. In consideration of the agreements of the plaintiff, the defendants therein agreed, in effect, to load out the product, and pay for the same, as follows, to wit: All the factory lumber, otherwise known as flat, shop, common, and better, the defendants were to commence shipping on May 15, 1889, and to pay in full for all shipped every fifteen days, for the product shipped during the preceding fifteen days, at the rate of $20 per 1,000 feet, and were to continuing shipping at the rate of not less than 50,000 feet per day. That all the balance of the lumber and pickets not described in the preceding paragraph the defendants should begin to ship from the yard by May 15, 1889, and to continue such shipment from day to day, and should have sixty days' time on said lumber and pickets, and should be allowed a discount of two per cent. for cash in ten days; every car-load of lumber to be paid for in this manner from the time of shipment, at the rate of $10 per thousand feet. That all the lumber sawed after the then present season should be paid for as above set forth, at the same rate as previously mentioned. That all the lumber that was sawed by the plaintiff up to October 1, 1889, should be shipped by May 1, 1890, and all the lumber sawed after October 1, 1889, should be shipped by July 1, 1890. That the shingles and lath then in stock should be paid for in cash, net thirty days from the date of said contract; and on the last day of each and every month an estimate should be made of the amount of shingles, lath, and pickets in stock at the plaintiff's yard, and for which the defendants were to pay not, in thirty days from the time of each estimate, and so

on for the whole season, until the cut should be completed. That, in case the defendants desired any of said lumber planed, the plaintiff was to plane it at the same price or prices as were paid for the previous season by *Mihills & Manson* for the same work, the defendants agreeing to bring such lumber as they desired planed to the planing-mill, and the plaintiff to place said lumber, when planed, on the car platform or in shed as the defendants might direct. The plaintiff further agreed, in effect, to furnish the defendants the lumber wagons and tools without cost, for the purpose of loading said lumber in said yard, on the express conditions, however, that the defendants should leave said lumber wagons and tools in as good condition as they were at the time of making the contract, reasonable use and wear thereof only excepted. As fast as said lumber was taken from the piles the said parties each were to have a man or men to measure the same, and to compare their measurements at that time, and to decide on the amount, which should be final. The prices — $20 per thousand, and $10 per thousand — were set forth in the agreement, so that the value of each board as shipped might be determined at the time; but it was expressly understood and agreed that when the final settlement should be made it was to be made on the basis set forth in the forepart of said contract.

It is conceded that the plaintiff would be entitled to recover the amount thus claimed were it not for the false representations alleged in the answers.

The respective answers of *Mihills & Manson* and *Wilder, Collins & Co.* consisted of admissions and denials, and also alleged by way of defense, and also by way of counterclaim, in effect, that prior to the execution of said contract about 6,000,000 feet of the amount of lumber and timber covered by said contract had already been sawed, and was piled in the yard of the plaintiff at Gile; that the logs out

of which the balance of said lumber was to be cut were in the woods and on the river above said yard; that, as an inducement to the defendants to enter into said contract, the agents and officers of the plaintiff, intending thereby to deceive and defraud the defendants, (1) falsely and fraudulently represented to the defendants that the proportion of shop lumber, so called, then sawed and in the said yard, consisted of what was termed flat common lumber and better, being $1\frac{1}{4}$, $1\frac{1}{2}$, and 2 inches thick, and would average about sixty-five per cent. of the whole amount of lumber then cut and piled in said yard, being about 6,000,000 feet as aforesaid; (2) that not to exceed five per cent. of said shop lumber was what was called flat common; (3) that there were no culls piled in with said shop lumber; (4) that the logs mentioned in said contract to be sawed and manufactured into lumber would run as good or better than said 6,000,000 feet of lumber then piled in the yard; (5) that the said logs would run and work up into manufactured lumber and timber, so as to be a dollar a thousand better in quality than the cut of the previous year; that all and singular the representations above mentioned were false and fraudulent, and were known to be so by the officers and agents of the plaintiff; that the said lumber then piled in said yard did not average sixty-five per cent. shop lumber, being flat common and better, nor did the said shop lumber average only five per cent. of what was called flat common lumber, but there was a much smaller average or proportion of what is called shop lumber in said pile so cut in said yard, and a much greater proportion of what is called flat common than five per centum thereof; that there was a large amount of culls piled in with said shop lumber; that said logs then uncut did not run or average as good or better than said lumber so piled in said yard, nor as good as the same was so represented to be; that, if the same had been as it was represented to be, the value thereof would

have been $54,000 more than the same actually was as cut and delivered to the defendants, and the defendants were thereby damaged in the sum last named. The plaintiff, replying to the counterclaim in each of said answers, denied each and every allegation thereof.

At the close of the trial the jury returned a special verdict, wherein and whereby they found as matters of fact in respect to the *lumber in the yard* at the time of making the contract, in effect: (1) That McCrossin stated, or requested and procured McAllister or Gilles to state, to *Mihills*, before the making of the contract, that the total amount of lumber then cut and piled in the plaintiff's yard was about 6,000,000 feet, board measure; (2) that such representation was made for the purpose of inducing the defendants to purchase the lumber in question; (3) that such representation was not true; (4) that McCrossin, before the making of the contract, stated, or requested and procured McAllister or Gilles to state, to *Mihills*, the amount of flat common and better lumber in said yard; (5) that such statement to *Mihills* was not the correct and true amount of such lumber in said yard; (6) that the plaintiff, through its agents, in the ordinary course of business, knew, or ought to have known, that such representation was not true; (7) that McCrossin, at the time of the making of such statement or representation, knew, or ought to have known, that it was not true; (8) that such statement or representation was made for the purpose of inducing the defendants to purchase the lumber in question; (9) that sixty-five per cent. of the whole amount of lumber cut and piled in the yard on March 24, 1889, *was piled as flat common and better;* (10) that, if the jury found that *it was represented to the defendants* that there was a sufficient amount of flat common and better lumber piled as such in said yard to amount to sixty-five per cent. of the whole amount of lumber then cut and piled in said yard, then such statement or representa-

tion was relied upon by the defendants in entering into the contract; (11) that McCrossin, before the making of the contract, stated to *Mihills* that of the flat common and better lumber then piled as such in said yard there was not to exceed five per cent. of flat common; (12) that such representation was made for the purpose of inducing the defendants to purchase the lumber in question; (14) that such representation was relied on by the defendants in making the contract; (13) that such representation was not true; (15) that the plaintiff, through its agents, in the ordinary course of its business, knew, or ought to have known, that such representation was not true; (16) that McCrossin knew, or ought to have known, that such representation was not true; (17) that McCrossin made such representation positively and as of his own knowledge; (18) that before the making of the contract McCrossin represented to *Mihills* that there were no culls in the flat common and better lumber piled as such in said yard; (19) that such representation was made for the purpose of inducing the defendants to purchase the lumber in question; (20) that such representation was not true; (21) that the plaintiff, through its agents, in the ordinary course of business, knew, or ought to have known, that such representation was not true; (22) that McCrossin knew, or ought to have known, that that representation was not true; (23) that the defendants, in making the contract, relied upon the truth of such representation; (24) that McCrossin made such representation positively, as of his own knowledge.

And, in respect to *the lumber in the logs* at the time of making the contract, the jury found in effect: (25) That before the making of the contract McCrossin represented to *Mihills* that the logs then cut and in the woods on the west branch of the Montreal river would, when sawed, run or yield as good or better in quality than the lumber then sawed and piled in the yard; (26) that the representation

made by McCrossin in respect to the logs was that, *in his judgment*, the logs up the river were as good, or would make as good lumber, as those already sawed, with the exception of about 800,000 feet; (28) that such representation was relied on by the defendants in making the contract; (29) that such representation was made by McCrossin positively, as of his own knowledge; (27) but the same was not true; (30) that the plaintiff, through its agents, in the ordinary course of its business, knew, or ought to have known, that such representation was not true; (31) that McCrossin knew, or ought to have known, that such representation was not true; (32) that the defendants, in making the contract, relied upon the truth of such representation; (33) that before the making of the contract McCrossin represented to *Mihills* that the whole cut of 1888–89, including the lumber in the yard and the logs in the woods and in the river, would run a dollar a thousand better than the cut made by the plaintiff the previous season; (34) that such representation was made for the purpose of inducing the defendants to purchase the lumber in question; (35) that such representation was not true; (36) that the plaintiff, through its agents, in the ordinary course of its business, knew, or ought to have known, that such representation was not true; (37) that McCrossin, at the time of making said statement, knew, or ought to have known, that it was not true; (38) that the defendants, in making the contract, relied upon the truth of such representation; (39) that McCrossin made such statement positively, and as of his own knowledge; (40) that of the whole cut in question there was 31.55 per cent. of the lumber known as flat common and better; (41) that, including the whole cut in question, there was of the grade known as flat common and better. 8¼ per cent. of flat common; (42) that the defendants were entitled to recover as damages $50,000.

Thereupon judgment was entered for the difference be-

tween said last-mentioned sum and the amount claimed by the plaintiff in its complaint, to wit, for the sum of $8,741.50, and costs.    From that judgment the plaintiff appeals.

*William F. Vilas,* counsel for the appellant, to the point that the dishonest intention is an essential element of fraud by false representations, cited Benj. Sales, secs. 420–422, 428, 429, 554–562, 610, 611; *Pasley v. Freeman,* 3 Term, 51; *Haycraft v. Creasy,* 2 East, 92; *Evans v. Collins,* 5 Q. B. 820; *Taylor v. Ashton,* 11 Mees. & W. 401; *Ormrod v. Huth,* 14 id. 650; *Barley v. Wolford,* 9 Q. B. 197; *Freeman v. Baker,* 5 Barn. & Ad. 797, 805; *Childers v. Wooler,* 2 El. & El. 287; *S. C.* 29 L. J. Q. B. Div. 129; *Wilde v. Gibson,* 1 H. L. Cas. 633; *Dickson v. Reuter's Telegram Co.* 30 Eng. (Moak), 1; *Derry v. Peek,* L. R. 14 App. Cas. 337, 346; *Polhill v. Walter,* 3 Barn. & Ad. 114; Kerr, Fraud & Mistake (Bump's ed.), 55; 2 Pomeroy, Eq. Jur. sec. 884; *Pasley v. Freeman,* 2 Smith, L. C. 176–186, notes; *Chandelor v. Lopus,* 2 Croke, 2; *S. C.* 1 Smith, L. C. (8th ed.), 294 and notes; *Salisbury v. Howe,* 87 N. Y. 135; *Wakeman v. Dalley,* 51 id. 27; *Bennett v. Judson,* 21 id. 238; *Lord v. Goddard,* 13 How. 199; *Allen v. Addington,* 7 Wend. 9; *S. C.* 11 id. 375; *Young v. Covell,* 8 Johns. 25; *Meyer v. Amidon,* 45 N. Y. 169; *Oberlander v. Spiess,* id. 175; *Zabriskie v. Smith,* 13 id. 322; *Hubbard v. Briggs,* 31 id. 518, 529; *Gallager v. Brunel,* 6 Cow. 346, 352; *Atkins v. Elwell,* 45 N. Y. 753, 760, 761; *Marsh v. Falker,* 40 id. 562; *Chester v. Comstock,* id. 575, note; *Hubbell v. Meigs,* 50 id. 480; *Lamb v. Kelsey,* 54 id. 645; *Stitt v. Little,* 63 id. 427; *Hammond v. Pennock,* 61 id. 145; *Dambmann v. Schulting,* 75 id. 55; *King v. Eagle Mills,* 10 Allen, 548; *Beach v. Bemis,* 107 Mass. 498; *Stone v. Denny,* 4 Met. 151; *Emerson v. Brigham,* 10 Mass. 197; *Page v. Bent,* 2 Met. 371; *Pearson v. Howe,* 1 Allen, 207; *Bowker v. De Long,* 141 Mass. 315; *Tryon v. Whitmarsh,* 1 Met. 1; *Dyer v. Lewis,* 7 Mass. 284; *Cooper v. Lovering,* 106 id. 77; *Bannister v. Alderman,* 111 id. 261;

*Tucker v. White*, 125 id. 344; *Cole v. Cassidy*, 138 id. 437; *Cowley v. Dobbins*, 136 id. 401; *Russell v. Clark's Ex'rs*, 7 Cranch, 69; *Cowley v. Smyth*, 46 N. J. Law, 380; *Bond v. Clark*, 35 Vt. 577; *Griswold v. Sabin*, 51 N. H. 167; *Pettigrew v. Chellis*, 41 id. 95; *Page v. Parker*, 43 id. 363, 369; *Hanson v. Edgerly*, 29 id. 343; *Mahurin v. Harding*, 28 id. 128, and note; *Bedell v. Stevens*, id. 122; *Hoitt v. Holcomb*, 23 id. 535; *Lord v. Colley*, 6 id. 99; *Kingsbury v. Taylor*, 29 Me. 508; *Bryant v. Crosby*, 36 id. 562, 571; *Hammatt v. Emerson*, 27 id. 308, 326; *Pratt v. Philbrook*, 33 id. 17; *Long v. Woodman*, 58 id. 49; *Martin v. Jordin*, 60 id. 531; *Thompson v. Hinds*, 67 id. 177; *Buck v. Leach*, 69 id. 484; *Bokee v. Walker*, 14 Pa. St. 139; *Huber v. Wilson*, 23 id. 178; *Graham v. Hollinger*, 46 id. 55; *Watts v. Cummins*, 59 id. 84; *Dilworth v. Bradner*, 85 id. 238; *Davis v. Stuard*, 99 id. 295; *Bullitt v. Farrar*, 42 Minn. 8; *S. C.* 30 Cent. L. J. 99; *Merriam v. Pine City L. Co.* 23 Minn. 314; *Busterud v. Farrington*, 36 id. 320; *Whitten v. Wright*, 34 Mich. 92; *Collins v. Jackson*, 54 id. 187; *Becker v. Hastings*, 15 id. 47; *Horner v. Fellows*, 1 Doug. 51; *Holmes v. Clark*, 10 Iowa, 423; *Courtney v. Carr*, 11 id. 295; *Gates v. Reynolds*, 13 id. 1; *Hallam v. Todhunter*, 24 id. 166; *McKowan v. Furgason*, 47 id. 636; *Avery v. Chapman*, 62 id. 144; *Hubbard v. Weare*, 79 id. 678; *Fooks v. Waples*, 1 Harr. (Del.), 131; *Miller v. Howell*, 2 Ill. 499; *Tone v. Wilson*, 81 id. 533, 534; *Mitchell v. Deeds*, 49 id. 416; *Campbell v. Hillman*, 15 B. Mon. 508; *Sims v. Eiland*, 57 Miss. 83.

For the respondents *Mihills* and *Manson* there was a brief by *Pinney & Sanborn;* for the respondents *Wilder, Collins,* and *Ingraham* a brief by *Olin & Butler;* and the cause was argued orally by *S. U. Pinney, A. L. Sanborn,* and *J. M. Olin.* To the point that the trial judge, in his instructions to the jury, correctly stated the law as to when it was unnecessary to show that false representations were wilfully or intentionally fraudulent, they cited *Miner v.*

*Medbury,* 6 Wis. 295; *Smith v. Mariner,* 5 id. 577; *Risch v. Von Lillienthal,* 34 id. 250, 257; *Bird v. Kleiner,* 41 id. 134, 138; *Cotzhausen v. Simon,* 47 id. 106; *Wells v. McGeoch,* 71 id. 196, 231; *Davis v. Nuzum,* 72 id. 439; *Redgrave v. Hurd,* 20 Ch. Div. 1; *Holbrook v. Burt,* 22 Pick. 546; *Middleton v. Jerdee,* 73 Wis. 39; *McKinnon v. Vollmar,* 75 id. 82; *Milliken v. Thorndike,* 103 Mass. 382, 385; *Fisher v. Mellen,* id. 503; *Litchfield v. Hutchinson,* 117 id. 195; *Safford v. Grout,* 120 id. 25; *Cole v. Cassidy,* 138 id. 437–8; *Hine v. Campion,* 7 Ch. Div. 344; *Reese River S. M. Co. v. Smith,* L. R. 4 H. L. (Eng. & I. App. Cas.), 64.

CASSODAY, J. The trial court submitted to the jury, in the form of a special verdict, forty-two several questions for determination. The difficulty of holding in the mind so many different questions is apparent. The statute requiring a special verdict to be submitted to the jury seems to limit such questions to such facts as are controverted and put in issue by the pleadings, or at most to such as might properly have been put in issue by the pleadings; that is to say, issuable facts, in contradistinction to mere evidence. Sec. 2858, R. S. Such verdict was never designed to elicit from the jury a mere abstract of the evidence. Nor was it ever designed to submit to the jury undisputed questions of fact. From the very nature of things an undisputed question of fact cannot constitute a material *and controverted* question of fact, and hence the propriety of submitting such undisputed questions has frequently been doubted, and the refusal to so submit them frequently been sanctioned, by this court. *Heddles v. C. & N. W. R. Co.* 74 Wis. 257, 258, and cases there cited.

As indicated in the foregoing statement, the respective answers in the case at bar expressly alleged by way of defense, and also by way of counterclaim, "that, prior to the execution of said contract, about one third, to wit, about six

million feet, of the amount of lumber and timber covered by said contract, had already been sawed, and was piled in the yard of the plaintiff at Gile." One part of the charge also stated that as the true amount in the yard. Notwithstanding the fact thus doubly alleged in the respective answers and asserted by the court, yet, as indicated in the foregoing statement, the jury, in answer to the first, second, and third questions submitted, in effect found that, for the purpose of inducing the defendants to purchase the lumber in question, McCrossin stated, or requested and procured McAllister or Gilles to state, to *Mihills*, before the making of the contract, that the total amount of lumber then cut and piled in the plaintiff's yard was about 6,000,000 feet, board measure; and that such representation was not true. Thus an undisputed fact, controverted by no one, was submitted to the jury as a material and controverted fact, and the jury found that the representation made of the existence of the fact so admitted, was false and made for the purpose of inducing the defendant to make the purchase. Having thus found the representation of a fact to be false, which was not put in issue by the pleadings nor controverted by any one, but admitted by all the defendants, are we at liberty to say that it did not enter into the damages assessed in favor of the defendants? We find nothing in the charge of the court nor the other findings of the jury which necessarily excluded such false finding from the consideration of the latter in assessing damages in favor of the defendants.

It is true that by the fourth, fifth, sixth, seventh, and eighth findings, the jury found in effect that, before the making of the contract, and for the purpose of inducing the defendants to make the same, the plaintiff falsely represented the amount of flat common and better lumber then in the yard; but it will be observed from the foregoing statement that they did not find what the representation

so made was, nor its extent, nor anything to indicate the proportionate amount of the lumber in the yard which consisted of flat common and better. The ninth finding is merely to the effect that sixty-five per cent. of the whole amount in the yard at the time named " was piled as flat common and better." The mere piling of that proportion as flat common and better is not equivalent to a representation that there was in fact that proportion of flat common and better in the yard. Besides, there is no finding that any portion of what was so piled as flat common and better was not in fact flat common and better. The result is that the answer to the tenth question submitted is based upon a supposed finding by the jury of a misrepresentation to the defendants, which was never found, and hence that finding is of no significance. Besides, there is no finding of the true amount of flat common and better in the yard at the time of making the contract.

By the eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth findings the jury found in effect that, before the making of the contract, and for the purpose of inducing the defendants to make the same, the plaintiff falsely represented that of the flat common and better then in the yard there was not to exceed five per cent. of flat common, and that the defendants relied thereon in making the contract; but they nowhere found the amount thereof which in fact consisted of flat common.

By the eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, and twenty-fourth findings the jury found in effect that, before the making of the contract, and for the purpose of inducing the defendants to make the same, the plaintiff falsely represented that there were no culls in the lumber piled in the yard as flat common and better, and that the defendants relied thereon in making the contract; but they nowhere find the amount thereof which in fact consisted of culls.

By the twenty-fifth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, and thirty-second findings the jury found in effect that, before the making of the contract, and for the purpose of inducing the defendants to make the same, the plaintiff falsely represented that the logs in the woods, when sawed, would run or yield as good or better in quality than the lumber then sawed and piled in the yard, and that the defendants relied thereon in making the contract; but they nowhere find how they in fact did run or yield when so manufactured into lumber, nor the amounts of the different qualities mentioned of the lumber so manufactured from said logs, nor the difference in the quality of the lumber manufactured therefrom, in the respects mentioned, and the lumber in the yard at the time of making the contract.

By the thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, and thirty-ninth findings the jury found in effect that, before the making of the contract, and for the purpose of inducing the defendants to make the same, the plaintiff falsely represented that the whole cut of 1888–89, including the lumber in the yard and the logs in the woods, would run a dollar a thousand better than the cut made by the plaintiff the previous season, and that the defendants relied thereon in making the contract; but they nowhere find how they in fact did run, nor the amount of the different qualities mentioned of the lumber manufactured from such logs, nor the difference in the quality of the lumber manufactured therefrom, in the respects mentioned, and the cut made by the plaintiff the previous season.

By the forty-second finding the jury found that the defendants were entitled to recover as damages $50,000; but the several findings mentioned in no way aided the jury in reaching such conclusion, nor the court in entering judgment in favor of the defendants for the difference between

that amount and the amount which it is conceded would have been due to the plaintiff in the absence of any false representations. It is impossible to tell from the special verdict what items of damage constitute or go to make up the $50,000 thus found. It is true that by the fortieth and forty-first findings the jury found, in effect, that of the whole cut in question there was 31.55 per cent. of the lumber known as flat common and better, and that of that grade there was 8¼ per cent. of flat common. These figures, it is said, would have authorized the jury to assess the damages of the defendants at $58,597.34; and the fact that they assessed the damages of the defendants at several thousand dollars less in no way prejudiced the plaintiff. Such might have been the case had such damages been found by way of a general verdict in favor of the defendants; but we have no such general verdict. The inquiry here is whether any of the special findings mentioned aided the jury in reaching the conclusion they did in respect to the damages awarded; that is to say, whether the several questions submitted were helpful or hurtful. The learned counsel for the defendants frankly concede, however, that there is no evidence to sustain the findings to the fortieth and forty-first questions submitted. They contend that the answer to the fortieth question should have been 38 per cent., and the answer to the forty-first question should have been 7.8 per cent., in accordance with their evidence; and that such figures would have authorized the jury to assess the damages of the defendants at $61,480.82.

Upon this question of damages, as found by the special verdict, it becomes important to consider that portion of the charge of the learned trial judge in these words: "If the jury believe from the testimony in the case *that all of the false and fraudulent representations* claimed by defendants to have been made by plaintiff's officers and agents *were in fact so falsely and fraudulently made,* and that they

*were material,* and that the *defendants relied* upon the truth of the same, and were thereby induced to enter into the contract in question, and thereby suffered damages, it is for you to determine whether or not from the evidence tending to support the claim that the entire cut received under the contract from the logs not manufactured when the contract was made, and the 6,000,000 feet then in the yard, was 15,058,137 feet; that, whether or not, according to the representations as it is claimed they were made, there should have been 9,262,500 feet, or 61¾ per cent. of it, shop common or better lumber;. and whether or not there should have been 487,500 feet, or 3¼ per cent., flat lumber, and 5,250,000 feet, or 35 per cent., inch lumber; and whether or not these quantities at the mill, when the lumber was to have been and was delivered, were worth, respectively, $22.10, $10, and $9, per 1,000,— making in all $257,711.34; and whether or not their claim is established that in truth and fact said cut yielded only 4,537,551 feet, or 30.2 per cent. of it, flat common or better lumber, and 1,174,533 feet, or 7.8 per cent. of it, being flat lumber, and 9,336,033 feet, or 62 per cent., of inch lumber, and the dimension stuff, making the total, at the same valuation as above stated for each kind, the sum of $196,270.52; and that they therefore suffered damages in the neighborhood of $61,000. [To the giving of which instruction last afore-. said the plaintiff duly excepted.] This question of damages, gentlemen, is peculiarly within the province of the jury; and it rests wholly and entirely with you to determine from all the evidence in the case, if you find the defendants entitled to any, what the amount of such damages is. [To the giving of which instruction last aforesaid the plaintiff duly excepted.]"

Thus the jury were expressly authorized to assess the damages of the defendants, by reason of false representations in making the contract, at $61,000,— that is to say,

$7,000 in excess of the damages alleged in the answers, and $11,000 in excess of the damages which the jury did find; but this was only authorized in case the jury found that *all* the misrepresentations alleged were in fact made, and each and all falsely and fraudulently made, and were material, and were relied upon by the defendants. The wide discrepancy between the amount of the damages found by the jury and thus authorized, pretty clearly demonstrates that the jury either failed to find that the alleged misrepresentations were all made, or were all false, or were all material and relied upon by the defendants. Since the jury must have so failed to find in one or more of these respects, it becomes a matter of pure conjecture as to how they reached the conclusion they did respecting the damages sustained by the defendants. Whether they all agreed respecting the several propositions considered by them, or differed, as to some, one way, and, as to others, another way, and finally relieved themselves from further responsibility by agreeing upon the gross sum indicated, it is impossible to tell from the special verdict.

That the jury were at liberty to thus divide and subdivide is apparent from other instructions to the effect that it was not necessary for the defendants, in order to establish a liability against the plaintiff, to prove all the representations alleged in the answers; that, if the jury believed that some one or more of such representations were so made, and that the same were false and material, and relied upon by the defendants, then the plaintif was liable in damages therefor. And again: " In considering these various grounds upon which damages are claimed, the jury must consider each one separately, and arrive at a conclusion from the testimony whether or not the defendants suffered any damages by reason of such misrepresentation, as you may find from the testimony it was made. And if you find that damages resulted separately and independently from each

or any of such representations, then you should so consider them; and upon this branch of the case I give you the following instruction as requested by the plaintiff's counsel: 'But in assessing the defendants' damages the jury ought not to do it in a mere gross estimate, but should separately and intelligently consider each separate charge of false and fraudulent representation, and only award damages upon such as are specifically and fully sustained, and as to each such should distinguish and separately find the damages sustained by reason of that, the combined result of such separate items only being found.'"

But, notwithstanding this instruction, no question was submitted to the jury authorizing them to thus distinguish and separately find the damages sustained by reason of any one of such representations; nor even as to the lumber in the yard and the logs in the woods, although expressly requested to so separately submit. It seems to us that such failure to separately submit tended to mislead the jury. The special verdict in the case at bar is an apt illustration of the wisdom of the remark of RYAN, C. J., in saying that "the statute providing for special verdicts is an excellent one, tending to dispel the occasional darkness visible of general verdicts. But special verdicts are worse than useless if courts do not submit for them single, direct, and plain questions, and insist upon positive, direct, and intelligible answers." *Carroll v. Bohan,* 43 Wis. 218. See, also, *Eberhardt v. Sanger,* 51 Wis. 74, and cases there cited. The darkness which surrounds the general assessment of damages in the case at bar is in no way dispelled by the special verdict returned. On the contrary, some portions of that verdict seem to be well calculated to increase such darkness by unnecessarily obstructing, or at least confusing, the mental vision of the jury.

Again, as indicated in the foregoing statement, the twenty-fifth and twenty-sixth findings of the jury are mani-

festly inconsistent, if not repugnant to each other. In the one the jury found, in effect, that McCrossin represented to *Mihills* that the logs then cut and in the woods would, when sawed, run or yield as good or better in quality than the lumber then sawed and piled in the yard; while in the other they found, in effect, that the representation made by McCrossin in respect to the logs was that, "*in his judgment,*" the logs up the river were as good, or would make as good lumber, as those already sawed, with the exception of about 800,000 feet. Which of these findings was adopted as entering into the damages awarded? Or did some of the jury adopt one and some the other? It may be that the twenty-sixth was intended to be explanatory of the twenty-fifth. If so, then the two findings together are to the effect that McCrossin merely represented that "in his judgment" the logs would, when sawed into lumber, yield as good quality as the lumber then in the yard, except as to about 800,000 feet. Upon this point the court charged the jury to the effect that, if they answered the twenty-fifth question in the affirmative, then they should answer the twenty-sixth in view of such answer. The court refused to submit to the jury questions to the effect that, if either of said questions should be answered in the affirmative, then they should determine whether such representation was made in good faith and in the honest belief of its truth, and without any intention to mislead or deceive, and whether it was made and understood as an expression of opinion, and not as an affirmation of a certain fact as within McCrossin's knowledge. The court also refused to submit similar questions respecting the lumber in the yard, and rejected evidence tending to prove such good faith on the part of the plaintiff. It is true, the court charged in a general way that the jury should determine whether the representations made by McCrossin were the affirmation of positive facts, or merely an expression of an opinion; but no

question was submitted, other than the twenty-sixth, authorizing the jury to find that any of the representations made were mere expressions of opinion. Certainly McCrossin and other agents of the plaintiff were at liberty to express in good faith a mere opinion respecting the quality of the lumber in the yard at the time of making the contract, and much more of the lumber to be subsequently manufactured from the logs in the woods, which, at least to some extent, must have been a matter of opinion, without committing any fraud upon the defendants.

It is to be remembered that the agreement between the parties was reduced to writing and signed by them; that that writing must be regarded as the only agreement between them on the subject; that it contains no express warranty, and none can be implied; that the defendants cannot, therefore, recover anything on the mere ground of warranty; that they can only recover on the ground of fraud or false representation respecting some existing fact or facts, made for the purpose of inducing the purchase, and relied upon by the defendants.   The learned counsel for the plaintiff goes further, and contends that the defendants could only recover in case such false representations were made with the intention to deceive the defendants and for the purpose of inducing them thereby to make the purchase. In other words, there can be no legal fraud without an actual fraudulent purpose, sufficient to support an action for deceit.

In *Bird v. Kleiner*, 41 Wis. 134, it was held that " where, in the negotiation for the sale of land, the vendor points out to the vendee, as the subject of the proposed sale, land belonging to another person, and the vendee accepts a deed of land belonging to the vendor, supposing it to be the land so pointed out, the vendee may recover damages resulting from the misrepresentation, without proof of any fraudulent intent therein." *Davis v. Nuzum*, 72 Wis. 439, is quite

similar, and to the same effect. In *Cotzhausen v. Simon*, 47 Wis. 103, this court held that, "in an action for damages accruing from defendant's fraudulent misrepresentations in the sale of a mortgage of land, where the misrepresentations were material and false, and the defendant had the means of knowing, or ought to have known, that they were untrue, and the plaintiff did not know, and had not the present means of knowing, their falsity, and relied upon them as true, it is immaterial whether the defendant made them wilfully or not." This is taken from the opinion of the court by Mr. Justice ORTON in that case. To the same effect are *Middleton v. Jerdee*, 73 Wis. 39; *McKinnon v. Vollmar*, 75 Wis. 82; *Blygh v. Samson*, 137 Pa. St. 368; *Fisher v. Mellen*, 103 Mass. 503. These and several other cases in this court are reviewed by counsel for the plaintiff, who claims that they contain some expressions out of line with the best-considered cases in England and the courts of the several states. A citation to such cases will appear in the report of this case.

Undoubtedly it is a question upon which courts are not all in harmony, not always even with themselves. Much depends, however, upon the nature and character of the fact represented, and whether it is represented as the affirmation of a positive fact, or merely as an expression of an opinion. Thus in *Joliffe v. Baker*, 11 Q. B. Div. 255, cited by counsel, the representation was that a piece of land described contained three acres. This would appear to be a mere expression of opinion, of which the purchaser could judge as well as the vendor, unless in making the representation the latter assumed to know by measurement or otherwise. And yet in the leading opinion in that case it is said: "Perhaps it is scarcely necessary to add that there can be no doubt but, if a man affirms something as a positive fact, concerning which he has no knowledge whatever, knowing neither whether it is a fact or not, and does

so intending to induce another person to act upon it as a fact, and for his own benefit, regardless of whether the fact is so or not, then that is the strongest possible evidence of fraud in the plain meaning of the word, because by the hypothesis he could not have known that to be true as a fact which he pretended to know, and which he represented that he knew to be a fact." Id. 271. But even that case is modified, and the rule in England brought still nearer our adjudications, by the later English cases. *Palmer v. Johnson*, 12 Q. B. Div. 32; *S. C.*, affirmed, 13 Q. B. Div. 351; *Nash v. Wooderson*, 52 Law T. (N. S.), 49. In *Derry v. Peek*, L. R. 14 App. Cas. 377, cited by counsel, it is held: "Fraud is proved when it is shown that a false representation has been made knowingly or without belief in its truth, *or recklessly, without caring whether it be true or false.*" So in Bennett's Notes to Benjamin on Sales, p. 448, cited by counsel, it is said: "Guilty knowledge is essential. . . . But a fraudulent intention is ordinarily inferred from the knowledge that the statements made were false. . . . The same inference may arise where untrue statements are recklessly made as of one's own knowledge when the party knows nothing on the subject either way. If the statements are in fact untrue, it is a legal fraud, although not then known to be untrue, for the falsehood consists in stating that the party knew the facts when he did not; the statements, of course, being of *facts* susceptible of personal knowledge, *and not matters of opinion*, estimate, or judgment."

These expressions are supported by numerous authorities cited by the learned annotator, and they are substantially in accord with the decisions of this court cited, and to which this court feels bound to adhere. And they are certainly supported by the opinions of those learned men, Sir GEORGE JESSEL, M. R., and Lord CAIRNS, Ch., in the cases cited by the learned counsel for the defendants — *Redgrave*

*v. Hurd,* 20 Ch. Div. 1; *Reese River S. M. Co. v. Smith,* L. R. 4 E. & I. App. Cas. 64. But we have not time to continue the discussion further, nor is it necessary. What has been said will be a sufficient guide for a future trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.