## KELLER, Appellant, vs. SCHMIDT, Respondent.

*November 7 — November 24, 1899.*

*Negotiable instruments: Fraud: Negligence of maker: Duress: Special verdict: Setting aside answers: Appeal: New trial.*

1. A German farmer, who could not read or write English, executed a promissory note to lightning-rod agents for a sum which he himself had offered in settlement of their claim against him. He asked for no information as to the contents of the paper, although his son was present and could have informed him and he knew he was dealing with swindlers. *Held,* that he was guilty of negligence which would estop him from claiming relief against the note in the hands of a *bona fide* purchaser for value before maturity, even though the original claim was tinctured with fraud and he did not intend to sign a negotiable note therefor.

2. The defense that a negotiable note was obtained by duress of threats of suit is not available against a *bona fide* purchaser for value before maturity.

3. Where the evidence is insufficient to sustain certain findings of a special verdict, a new trial will be awarded on appeal unless the question of the appellant's right to judgment has been raised in the trial court by motion to set aside such findings and for judgment on the remainder of the verdict.

APPEAL from a judgment of the circuit court for Washington county: JAMES J. DICK, Circuit Judge. *Reversed.*

This action is to recover upon a promissory note for $190, given by the defendant to one J. D. Fleming or order, due in six months from May 3, 1898, payable at the express of-

fice in Richfield, Wisconsin, with six per cent. interest after due, duly indorsed, and held by the plaintiff before due. The answer sets up that the note was given for lightning rods; that a contract to put up the rods was obtained by fraudulent representations; that after the rods had been put up the defendant was induced to sign the note by threats and duress, without knowledge of what he signed, and upon the representation that the note was payable to Fleming and no other person; that defendant is a German, and cannot read or write English, and understands that language imperfectly, and did not know that the paper signed was a negotiable note.

A special verdict was returned by the jury substantially as follows: "(1) That the note was signed by defendant and delivered to Fleming, the payee; (2) that the note was indorsed by Fleming, and plaintiff is the owner thereof; (3) that the note is due and unpaid; (4) that the plaintiff became the lawful owner of the note before maturity, in due course of business, in good faith, and for a valuable consideration; (5) that the terms of the contract of May 2d were fraudulently misrepresented to defendant, whereby he was misled into signing it; (6) that the defendant did not intend to sign the note in question, but only intended to sign a paper obligation to pay Fleming, and no other person, the sum of $190; (7) that the defendant's signature to the note was obtained by fraud; (8) that said note was obtained by duress; (9) that defendant was ignorant of the true character of the note; (10) that defendant was not guilty of negligence in signing the note; (11) that he was not guilty of negligence in ascertaining the true character of the note; (12) that defendant has not ratified the note; (13) that the amount due on the note is $194.50."

Plaintiff moved the court for judgment notwithstanding the answers to questions 5 to 12, inclusive, which was denied. A motion for a new trial was also denied, and judgment was

ordered for defendant.    From the judgment so entered this appeal is taken.

*Simon Gillen,* for the appellant, to the point that the defendant was guilty of negligence, cited *Citizens' Nat. Bank v. Smith,* 55 N. H. 593; *Roach v. Karr,* 18 Kan. 529, 26 Am. Rep. 788; *Douglass v. Matting,* 29 Iowa, 498, 4 Am. Rep. 238; *Fayette Co. Sav. Bank v. Steffes,* 54 Iowa, 214; *Ruddell v. Fhalor,* 72 Ind. 533, 37 Am. Rep. 177; *Ruddell v. Dillman,* 73 Ind. 518, 38 Am. Rep. 152; *Dinsmore v. Stimbert,* 12 Neb. 433; *Williams v. Stoll,* 79 Ind. 80; *Chapman v. Rose,* 56 N. Y. 137; *Fischer v. Von Behren,* 70 Ind. 19; *Mackey v. Peterson,* 29 Minn. 300; *Baldwin v. Barrows,* 86 Ind. 351; *Abbott v. Rose,* 62 Me. 194, 16 Am. Rep. 427; *Bedell v. Herring,* 77 Cal. 572, 11 Am. St. Rep. 307; *Goetter v. Pickett,* 61 Ala. 387; *Cannon v. Lindsey,* 85 Ala. 111; *Rogers v. Place,* 29 Ind. 577; *Greenfield's Estate,* 14 Pa. St. 489; *DeCamp v. Hamma,* 29 Ohio St. 467; *Phelan v. Moss,* 67 Pa. St. 59, 5 Am. Rep. 402; *Ort v. Fowler,* 31 Kan. 478, 47 Am. Rep. 501; *Kellogg v. Curtis,* 65 Me. 59; *Shirts v. Overjohn,* 60 Mo. 305; 2 Am. & Eng. Ency. of Law (2d ed.), 327, 328, note 3; *Rowland v. Fowler,* 47 Conn. 347; *Yellow Medicine Co. Bank v. Tagley,* 57 Minn. 391; *Ward v. Johnson,* 51 Minn. 480; *Swift v. Tyson,* 16 Pet. 1; Daniel, Neg. Inst. (3d ed.), § 850; *Baldwin v. Bricker,* 86 Ind. 221; *German Bank v. Muth,* 96 Wis. 342; *Dodd v. Dunne,* 71 Wis. 578; *Kellogg v. Steiner,* 29 Wis. 626.

*P. O'Meara,* for the respondent.

BARDEEN, J.    This is one of that unfortunate class of cases in which a farmer has allowed himself to be overreached and imposed upon.    It involves the consideration of two questions: Does the evidence support the finding that, without negligence on his part, he was induced to sign the note in suit, by fraud?    Does the evidence warrant the finding that the note was obtained by duress?

The defendant is a German farmer, and is unable to read or write English, and understands it but imperfectly when spoken. On May 2, 1898, he signed a contract for lightning rods to be put on his house and barn at the rate of forty-seven and one-half cents per foot. The contract was left with him. It is quite probable he did not fully know of its contents, yet he took no means to ascertain what it contained. On the following day, Fleming and one Davis came and put up the rods. It was ascertained that the rods, points, and braces, at the contract price, amounted to $226.07. This the defendant refused to pay, claiming that the price was only to be $11 or $12. After some parleying, offers were made to reduce the amount to $220, then $210, and finally to $200, but defendant refused each offer. At this stage of the transaction occurred the circumstances relied upon to establish duress. We give the defendant's language:

"And then he said if I wouldn't settle with them I would never see them again, but others would come and I would have to pay $500 or $600 in that case. They went out, and attempted to go away; and then, before they left, Davis said if I wouldn't settle with them others would come and it would cost me probably half my farm, or they would take away my stock; that their company was worth millions of dollars." Defendant persisted in his refusal to settle, and the men started from the house to go away. The defendant's version of what followed is here given: "I called them back, and said I would settle with them. That is what I said. . . . When I saw I had dealing with swindlers, I made the offer of $190 just before Fleming and Davis started to leave. . . . I was satisfied to settle with them for $190 to get rid of them. . . . I settled with them to prevent trouble. The trouble I wanted to prevent was the lawsuit. I was afraid. I didn't know what I was doing. The reason I was afraid was because I was dealing with

swindlers.   The only thing I was afraid of was that I thought
they would sue me if I wouldn't settle.   That is the only
thing I was afraid of.   I was afraid of nothing else.  .  .  .
It is the fact that the only reason why I called them back
was that I was afraid they would sue me, and get judgment
against me for the lightning rods, and levy on my farm and
stock by execution."

In detailing the circumstances under which the note was
signed, the witness stated: "After I had signed the paper,
Fleming said I should pay only to him and no one else; that
he was to take the money.  .  .  Fleming said I shall pay
to no one else but him.   They said nothing as to who the
paper was payable to.   After I signed it, Fleming said,
' Don't pay to any one but him.'   They said that the paper
was made payable to Fleming; so Fleming told me.   When
Fleming said that, the paper was on the table.   At that
time the boy or the girl were signing it as witnesses.   That
was said the first time when I was to sign the paper.   I
don't think I have signed it or not.  .  .  .   When the
paper was on the table, before I had signed it, Fleming
came to the table and said, ' You must not pay to any one
but to me; I am to get the money for the paper.'   I then
signed the paper, after that."   He further said: "I don't
know what was in that paper.   Fleming and Davis didn't
read the paper to me.   No one read it to me.   No one told
me what was in it."   On cross-examination, he testified
that he knew what it was for; that it was to satisfy the
lightning-rod matter, so that he would not have any more
trouble or a lawsuit about it.   In his examination before trial,
he testified that he knew that the paper signed by him was
to secure the payment of $190 in six months; that it was to
be paid to Fleming at the express office in Richfield; that
it was not to bear interest until due; and that it would bear
interest after due at six per cent.

We have no hesitancy in saying that, under the circum-

stances in proof, the finding that the note in suit was se-
cured by fraud, without negligence on the part of the de-
fendant, cannot be sustained.  Even though it be admitted
that the original contract was tinctured with fraud as al-
leged, it was left in the possession of defendant after sign-
ing, and he took no means to. ascertain its contents.  His
son could read English, yet he was_ not called upon to in-
terpret it.  Before the defendant executed the note, he had
full knowledge that the amount claimed was largely in ex-
cess of the amount he understood was to be due under the
original contract.  With that knowledge he called the men
back, and offered to settle for $190, in order to avoid further
trouble.  He repeatedly testified that it was after he had
signed the note that Fleming said the money was to be paid
to him only.  But, whether it was before or after he signed
the note, the evidence shows that he was clearly guilty of
negligence in signing it.  It is not claimed that he was mis-
informed as to its contents.  He asked for no information
on the subject.  His son could readily have given him all
that he desired.  He knew that he was dealing with swind-
lers, and common prudence demanded that he should ascer-
tain the-nature and terms of the instrument he was about
to sign.  Failing in this regard, he was guilty of such neg-
ligence as to estop him from claiming relief against the note
in the hands of an innocent third party.  The evidence
being without dispute, and the inferences to be drawn being
in no doubt, it was the clear duty of the court to have set
the verdict aside in that respect.  The cases of *Walker v.
Ebert*, 29 Wis. 194, and *Kellogg v. Steiner*, 29 Wis. 626, are
expressly based upon absence of negligence, and upon fraud
and misrepresentation equivalent to constructive forgery.
Similar circumstances do not exist in this case.  The fol-
lowing cases illustrate the different phases of negligence
that will prevent a recovery: *Citizens' Nat. Bank v. Smith,*
55 N. H. 593; *Roach v. Karr*, 18 Kan. 529; *Douglass v. Mat-*

Keller vs. Schmidt.

*ting,* 29 Iowa, 498; *Ruddell v. Fhalor,* 72 Ind. 533; *Dinsmore v. Stimbert,* 12 Neb. 433; *Chapman v. Rose,* 56 N. Y. 137; *Mackey v. Peterson,* 29 Minn. 300; *Bedell v. Herring,* 77 Cal. 572.

On the question of duress there is an entire absence of evidence to support the jury's conclusion. The only fact upon which duress can be predicated is the threat that if he did not pay or settle it might cost him half his farm. It seems quite unnecessary to discuss this question, as this court has recently determined, in a case where legal duress was shown, that such a defense was not available against the *bona fide* holder of a note before due, for value. *Mack v. Prang, ante,* p. 1. It being affirmatively established that the plaintiff is such holder, the finding of duress is no obstacle to a judgment in his favor.

After verdict, the plaintiff moved the court for judgment notwithstanding the answers to the questions upon the subject of fraud and duress. No motion was made to set aside the answers to these questions and for judgment upon the remainder of the verdict, but upon the denial of the first motion the plaintiff moved the court to set aside the entire verdict and for a new trial. It is urged that, in view of the conclusion we have arrived at, we should reverse the judgment and remand with directions to enter judgment for plaintiff. The proper practice in the court below would have been to have moved the court to set aside the parts of the special verdict to which we have referred, and for judgment on the remainder, as pointed out in *Conroy v. C., St. P., M. & O. R. Co.* 96 Wis. 243, and cases therein cited. No such motion having been made, and the possibility that new evidence may be produced by the defendant, renders it necessary to send the case back for a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.