Argued 7 February, decided 10 April, 1905.

### BROWN v. FELDWERT.

80 Pac. 414.

NOTES—ERASURE IN ADMITTED DOCUMENT.

1. The execution and delivery of an instrument being admitted, its production is unnecessary, and in case it is offered in evidence, an unexplained erasure is immaterial and does not affect its admissibility.

EFFECT OF DENYING MATTER NOT ALLEGED.

2. A denial of a statement not pleaded does not raise an issue, and no evidence should be permitted in support of it.

PLEADING FRAUD IN SIGNING WRITINGS.

3. It is absolutely essential in pleading that a signer of a paper was fraudulently misled as to what was being signed to show that such signer was free from negligence in the matter.

CURING DEFECT BY PLEADING OVER.

4. A defect or omission that can be cured by pleading over without objection must be one that is not imperatively essential to the cause of action.

NOTES—FAILURE OF CONSIDERATION AS A DEFENSE.

5. The defense that the consideration for a negotiable note failed is never available against an innocent purchaser.

EFFECT OF DENYING ADMITTED ALLEGATIONS.

6. A denial of an allegation of fact already admitted is not a denial at all—the pleading is controlled by the admission.

An example will illustrate this rule: In an action on a negotiable note, after the defendant has admitted that the payee, before maturity, indorsed, assigned and delivered the note to plaintiff for value, he cannot deny that plaintiff was an innocent purchaser for value, and plead affirmatively that there was no consideration for the note originally—the admission controls the denials.

PLEADING—ADMISSION OF NEGOTIABILITY.

7. An admission of the execution and delivery of a promissory note payable to a named person or order is an admission of the negotiability of such paper.

PLEADING—ADMISSION OF OWNERSHIP.

8. An admission that plaintiff acquired a certain note by indorsement and transfer from the payee is an admission of plaintiff's ownership.

AMENDMENTS—DISCRETION.
9. An application for leave to amend a pleading is addressed to the discretion of the trial court, and that discretion seems not to have been unjustly exercised in this instance.

From Lane: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE WOLVERTON.

This is an action by J. B. Brown against Theresa Feldwert and her husband on a promissory note. The plaintiff for cause of action alleges:

"That on or about the 22d day of June, 1901, at the City of Eugene, in the county of Lane, in the State of Oregon, the said defendants, Theresa Feldwert and Nic Feldwert, made their certain promissory note in writing, bearing date on that day, which said promissory note is in words and figures following, to wit:

"$215.00.                    Eugene, Cal., June 22, 1901.

"Eight months after date, for value received, I promise to pay Dr. Meyers & Co. or order, the sum of two hundred and fifteen dollars, with interest. Payable at San Francisco, Cal.

Theresa Feldwert.
Nic Feldwert."

"No. 5115. Due Feb. 22, 1902.

"And then and there delivered the said promissory note to the said Dr. Meyers & Co., who thereafter and before its maturity duly indorsed, assigned, and delivered said promissory note to the plaintiff herein for value. That the said plaintiff is now the lawful owner and holder of the said promissory note. That no part of the said promissory note or of the interest thereon has been paid. That there is now due and unpaid to the said plaintiff on said promissory note the sum of $215, and interest thereon at the rate of 6 per cent per annum from the 22d day of June, 1901."

The defendants, without previous denials in any form, set out three separate defenses. By the first they admit the genuineness of the signatures to the paper, but they deny that they knew they were signing a promissory note, and allege that the paper was obtained from them and their signatures were attached thereto through and by reason of the false and fraudulent representations of one Dr. Meyers that it was an agreement to pay to him the sum named on condition and whenever he succeeded in effecting a permanent cure of a malady with which one of the defendants was afflicted; that, having confidence in him, because

he conversed in their own language (the German), and by reason of his appearance as a man of education and fair dealing, they were induced to sign the note, believing it to be the agreement as represented; and that, having been so fraudulently procured, they are not liable upon the same. By the second they admit they signed the paper, but allege that the sole and only consideration therefor was that one Dr. Meyers represented that he would treat one of the defendants for a malady with which she was afflicted, and that he would effect a permanent cure; that he never treated her or performed any services for her whatever; and deny that plaintiff is an innocent purchaser for value in the usual course of business before maturity, but allege that he is chargeable with all defects therein. And by the third defense they allege that the note is null and void because procured by fraud, as alleged in the first separate defense, and for the further reason that Dr. Meyers was not licensed to practice medicine in Lane County, and therefore not authorized to perform the services agreed upon, of which plaintiff had notice. The reply consists of general denials, and sets up affirmatively that plaintiff is the holder in due course of the note in question. A jury being called, the plaintiff submitted the note and rested, whereupon the defendants attempted to introduce evidence, but were not allowed to do so, and the court finally instructed the jury to return a verdict for plaintiff in the amount demanded, which being done, judgment was entered thereon, and the defendants appeal.                                          AFFIRMED.

For appellants there was a brief over the name of *Harbaugh & Bower,* with an oral argument by *Mr. J. H. Bower.*

For respondent there was a brief over the name of *Thompson & Hardy,* with an oral argument by *Mr. Charles A. Hardy.*

Mr. Chief Justice Wolverton delivered the opinion.

1. There was an objection to the introduction of the note in evidence because the words "at the rate of eight per cent per annum" appeared upon the face of it to have been erased, which being overruled, error is assigned. The execution of the note was admitted by the answer, defendants not having denied the

fact. Neither was there any controversy relative to the identity. of the instrument, nor as to its having been changed or mutilated. The fact, therefore, that.an erasure appeared, which did not vary or alter its tenor as set out in extenso in the complaint, could not serve to render it inadmissible in evidence. It was probably not necessary for the plaintiff to have introduced the note, its execution being confessed; but, being desirous of doing so, its admission was not vulnerable to objection on the ground assigned. There was no error, therefore, in the ruling of the court.

The plaintiff having rested with the introduction of the note, the defendants offered evidence tending to establish their first defense, when they were met with the objection that it was not admissible because the answer stated no defense against recovery. This was coupled with another that defendants ought not to be permitted to prove such defenses until they had offered evidence tending to show that plaintiff was not an innocent holder for value and in due course. The objections were sustained, and defendants were not permitted to introduce any testimony whatever, and error is predicated upon the action of the court in that regard. The third separate defense was abandoned at the hearing. This leaves the first and second only to be considered.

2. The attempt of the defendants, it must be admitted, is not a good specimen of technical pleading. The purpose was, no doubt, to confess and avoid. It might be. inquired whether they have not confessed too much, so far as it relates to the first separate defense. They have confessed every allegation of the complaint by failure to deny anything. The defendants' denial that they knew that they were signing a promissory note raised no issue, because there was no allegation of that nature in the complaint.

3. But, conceding that defendants could regularly confess all in the manner they have, and yet avoid the action by their affirmative defenses, the very grave question remains whether they have stated facts that will constitute such a defense. The defense sought to be stated is that the note was procured by fraud; that is, that the defendants were induced to believe

through the deceitful and fraudulent statements of Dr. Meyers that they were signing an agreement to pay the money upon a consideration which never came to pass, and not a negotiable instrument, whereas in truth they signed the paper in question, and hence there could be no such a legal condition as a bona fide holder of it. If we concede, as many of the cases seem to hold (a matter we do not now decide), that a promissory note procured by fraud, the maker being misled into believing that he was signing a paper of an entirely different character, is itself a good defense against an indorser claiming to be an innocent purchaser for value, the answer falls short of stating such a defense, for it is essential that the note was so procured without the negligence of the maker. This much is established by the cases cited by appellants: *Green* v. *Wilkie,* 98 Iowa, 74 (66 N. W. 1046, 36 L. R. A. 434, 60 Am. St. Rep. 184) ; *Shenandoah Nat. Bank* v. *Gravatte* (Neb.), 95 N. W. 694; *Keller* v. *Ruppold,* 115 Wis. 636 (92 N. W. 364, 95 Am. St. Rep. 974) ; *Frederick* v. *Clemens,* 60 Mo. 313 ; *De Camp* v. *Hamma,* 29 Ohio St. 467.

In *Shirts* v. *Overjohn,* 60 Mo. 305, it was held that "Where it appeared that the party sought to be charged intended to bind himself by some obligation in writing, and voluntarily signed his name to what he supposed to be the obligation he intended to execute, having full and unrestricted means of ascertaining for himself the true character of such instrument before signing the same, but by his failure to inform himself of its contents, or by relying upon the representations of another as to the contents of the instrument presented for his signature, signed and delivered a negotiable note in lieu of the instrument intended to be signed, he cannot be heard to impeach its validity in the hands of a bona fide holder." This case bears a marked analogy to the one at bar, and seems to state the consensus of judicial opinion upon the subject; the learned author of the note to *Green* v. *Wilkie* (36 L. R. A. 434), saying: "Most of the cases, however, hold that if a person who can read trusts to the representations of, or reading of the paper by, a stranger, he will be guilty of negligence which will preclude his making the defense." See, also, upon this subject, *Mackey* v. *Peterson,* 29 Minn. 298 (13 N. W. 132, 43 Am. Rep. 211) ; *Ort* v. *Fowler,* 31 Kan. 478

(2 Pac. 580, 47 Am. Rep. 501); *Keller* v. *Schmidt,* 104 Wis. 596 (80 N. W. 935). The defendants have wholly failed to negative negligence on their part. The answer shows that Dr. Meyers conversed in their own language, was well dressed, and appeared to be a man of education and fair dealing, and therefore that they reposed confidence in him, and took for granted what he read to them to be a true rendition of the instrument they were about to sign. It does not appear, however, but that they could read English, and could readily have informed themselves then and there of the real contents of the paper; and, having not done so, they were negligent, and the defense of fraud cannot, therefore, avail them as against an innocent holder: *Fisher* v. *Von Behren,* 70 Ind. 19 (36 Am. Rep. 162).

4. The want of an allegation of the character indicated negativing negligence on the part of defendants was such an omission as was not cured by pleading over: *Booth* v. *Moody,* 30 Or. 222 (46 Pac. 884). The trial court's refusal to admit the evidence under this answer was therefore not error.

5. The second defense of the failure of consideration could not, under any of the authorities, have been availed of as against an innocent purchaser.,

6. Coupled with it is a denial that the plaintiff is an innocent purchaser for value. This is an attempt to deny what they have admitted to be true by failure to traverse the allegation of the complaint that the payee "thereafter and before maturity duly indorsed, assigned, and delivered said promissory note to the plaintiff herein for value." The matter was not in avoidance, but an attempt to deny by the separate defense when the fact was admitted by a failure to traverse in the regular way. This raised no issue, because the fact intended to be controverted had already been admitted by the very plainest rule of pleading under the Code. It seems to be further insisted that, when any fraud or illegality is proven in connection with the utterance of a paper sufficient to render it futile between the parties, the proof of that fact is sufficient to shift the burden of proof to the holder to show that he is an innocent purchaser for value in due course. We have said: "If it be shown on the part of the maker that the note was made under duress, or that

it had its inception in fraud, or if such facts be shown as will raise a strong suspicion of fraud, a further burden will thereby be cast upon the indorsee to show under what circumstances and for what value he became the holder; that is to say, he must then show that he acquired the paper bona fide, for value, in the usual course of business, before maturity, and under such circumstances as to create no presumption that he had knowledge of the facts which tend to impeach its validity": *Owens* v. *Snell,* 29 Or. 483 (44 Pac. 827). See, also, *Kenny* v. *Walker,* 29 Or. 41 (44 Pac. 501). The negotiable instruments act, adopted in 1899, prior to the execution of the note in question, would seem by its reading to require the purchaser to show affirmatively, among other things, that he had no notice of such or any other infirmities in the instrument at the time he acquired it: B. & C. Comp. §§ 4446-4456 (Laws 1899, pp. 24-26, §§ 44-54).

These matters, however, cannot help the defendants, for they have absolutely not denied ownership, or that it was indorsed for value before maturity, and have failed to make any issue or question whether the plaintiff's purchase was with notice of the infirmities suggested. The complaint surely states a good cause of action, and, unless controverted, it stands as a prima facie case. In other words, the plaintiff, by no competent pleading on the part of the defendants, has been put to his additional proofs of having paid value in due course, before maturity, and without notice of the infirmities. The fraud latterly spoken of must be distinguished from that which counsel claims for such as was attempted to be set up in the first separate answer; the purpose of the former being to show a state of facts that would exclude the possibility, in a legal sense, of an innocent holder of the paper, but all that is claimed for the fraud in the latter sense is that proof of it puts the plaintiff to the burden of showing good faith in his purchase and the want of notice of its infirmity. We say, as to this latter, the defendants' pleadings do not present the issue they are insisting upon.

7. In this connection it is further claimed that the note on its face destroys its negotiability. The fact of its negotiability is,

however, conceded by admitting the execution of the note in form as set out in the complaint.

8. Effort was made to introduce certain letters referred to in the record for the purpose of showing that the plaintiff was not the owner of the note in question. Here again plaintiff's ownership is admitted by failure to deny the allegation that he acquired the same by indorsement and transfer to him by the payee.

9. Another error is assigned because the court refused leave to amend the answer by adding an allegation that plaintiff had notice of the defects set out in the first and second defenses. ˮhis was a matter within the legal discretion of the trial court. The answer had twice been amended, and it is not clear that the amendment requested would have helped the defendants; so that we cannot say that there was error in that particular.

From these conclusions it is plain that the court very properly directed a verdict for the plaintiff, and the judgment appealed from will therefore be affirmed.        AFFIRMED.