ELAND STATE BANK, Respondent, vs. MASSACHUSETTS BOND-
ING & INSURANCE COMPANY and another, Appellants.

*April 6—May 15, 1917.*

*Principal and surety: Fidelity bond: Larceny or embezzlement by*
*bank cashier: Misappropriations or loans? Knowledge of other*
*officers: Evidence: Weight and sufficiency: Banks and banking:*
*Reports: "Correct, Attest:" Accountability of bank officers.*

1. In an action on a fidelity bond insuring the plaintiff bank against
   loss from any acts of its cashier amounting to larceny or em-
   bezzlement, the evidence is *held* to establish that the plaintiff's
   officers knew all the facts relating to the alleged misappropria-
   tions of its funds by the cashier and treated them as loans, and
   hence that no liability of the surety was shown.
2. The evidence of plaintiff's officers in such case, consisting of gen-
   eral denials of knowledge of material facts which it was their
   duty as such officers to know, is *held* to have been incredible and
   without any probative force when taken in connection with the
   particular facts admitted by them and with undisputed docu-
   mentary evidence consisting of "call reports," reports of com-
   mittee to bank and banking commissioner, declarations of di-
   rectors, account books of the bank, and certificates given by the
   bank to the bonding company to obtain renewals of the bond.
3. The words "Correct, Attest" followed by the signatures of bank
   directors, appended to a report transmitted to the commissioner
   of banking as showing the condition of the bank, mean not only
   that such directors bear witness but that they affirm the report
   to be true.
4. Public policy as well as private rights require that officers of banks
   should be held to strict accountability in the discharge of their
   official duties.

APPEAL from a judgment of the circuit court for Shawano
county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

This action was brought to recover on a bond given March
7, 1911, for one year and renewals of said bond issued in
1912, 1913, and 1914 executed by the defendant company as
surety for one *G. J. Moses,* cashier of plaintiff bank.

The complaint claims that *Moses,* while cashier of plaint-
iff bank, converted money belonging to the bank to his own

use and was guilty of larceny and embezzlement in so doing; that while cashier he permitted one John H. Walechka, a former cashier of plaintiff bank and principal stockholder thereof, to obtain sums of money from the bank, and that these sums taken by Walechka were not loans but constituted larceny or embezzlement.

Defendants denied all liability and alleged that there was no larceny or embezzlement by *Moses* or Walechka or any one else, and that all money received by *Moses* or Walechka was received by them as loans. Several defenses are set up in the answer, some of which will be referred to in the opinion herein.

The case was tried by the court and a jury. After the evidence was all in the court overruled a motion by defendants for a directed verdict. The following general verdict was returned by the jury:

"We, the jury, duly impaneled to try the issues in the above entitled action, find for the plaintiff and assess its damages at the sum of $9,861.34 dollars."

Judgment was entered in favor of the plaintiff upon the verdict, from which this appeal was taken.

For the appellants there was a brief by *M. J. Wallrich* of Shawano and *Brown & Guesmer* of Minneapolis, Minnesota, attorneys for the *Massachusetts Bonding & Insurance Company,* and *A. M. Andrews* of Shawano, attorney for *Moses;* and the cause was argued orally by *Arnold L. Guesmer.*

For the respondent there was a brief by *Dillett & Winter* of Shawano, and oral argument by *C. F. Dillett* and *Paul J. Winter.*

KERWIN, J.    Before the execution of the bond upon which this action was brought certain questions were propounded by the defendant company to plaintiff and answers required, some of which are:

"*Q.* What means will you use to ascertain whether his ac-

counts are correct?  *A.* Check them."  *"Q.* How frequently will they be examined?  *A.* At least twice annually by examining committee."  *"Q.* When were his accounts last examined?  *A.* At the meeting of the examining committee in January, on the 14th, 1911."  *"Q.* To whom and how frequently will he account for his handling of funds and securities?  *A.* To examining committee, who meet twice annually. To state examiners.  To me, I shall be here often."

It further appears that the bond in suit, executed March 7, 1911, was for a valuable consideration renewed thereafter in 1912 on delivery of the following certificate made by plaintiff:

"This is to certify, that on the 15th day of January, 1912, the books and accounts of *Mr. G. J. Moses* in our employ at Eland, Wis., were examined by us and we found them to be correct in every respect, and all moneys handled by him accounted for.  He has performed his duties in an acceptable and satisfactory manner, and we know of no reason why the guarantee bond should not be continued."

Renewals of the bond were thereafter made in February, 1913 and 1914, on a similar certificate.

The bond in suit covered cases only where *Moses* took money in such way as to amount to larceny or embezzlement. In order, therefore, to make out a case the plaintiff was obliged to prove that *Moses* misappropriated the money of the bank in such way as to amount to larceny or embezzlement.

We are convinced, after a careful examination of all the evidence, that there is no competent credible evidence to support the verdict or to establish any liability against the defendant company.  On the contrary, we think the evidence establishes that the moneys misappropriated by *Moses* were treated by the plaintiff as loans.

The evidence is overwhelming and without substantial dispute that the plaintiff, through its officers, knew all the facts relating to the alleged misappropriation of the funds of the bank and treated the funds unlawfully received as loans by the bank.  The proof is conclusive that the officers of the

plaintiff bank knew, or should have known, and cannot be heard to say that they did not know, of the falsity of the representations made by them to the defendant company.

The evidence of defendant is largely documentary and its oral testimony is specific on the particular material facts at issue, while the evidence of plaintiff on the vital questions consists in general denials of knowledge of material facts which it was the duty of the witnesses to know, and which from the admitted facts they ought to have known and should not be heard to say they did not know.

The competent documentary evidence alone in the case, consisting of "Call Reports," reports of committee to bank and banking commissioner, declarations of directors of plaintiff, account books of plaintiff bank, and certificates for renewals of bond from the bank to the surety, conclusively shows that no case was made by the plaintiff.

As before observed, the evidence of the plaintiff's witnesses consists of broad, sweeping denials of knowledge, and when taken in connection with the particular facts admitted by such witnesses and the undisputed evidence on the part of the defendant it is rendered incredible and without any probative force.     While the officers of the bank make general, sweeping denials of knowledge of the affairs of the bank, they show by the admission in their testimony of specific facts that they had knowledge.     The evidence shows clearly and without substantial dispute that the officers knew of the *Moses* and Walechka loans and that the money appropriated by them and for which this action was brought was at all times treated as loans.     To discuss the evidence in detail would extend this opinion to an unreasonable length and serve no useful purpose.

The "Call Reports" made by authority of law and transmitted to the commissioner of banking were sworn to by the cashier, with "Correct, Attest" by two directors of the plaintiff.     These reports show the condition of the bank and the

transactions regarding the *Moses* and Walechka items. But the directors claim they did not know the contents of these reports, yet they do not testify that they did not read them.

The cashier swears that the statement in the report is correct and that the schedules annexed fully and correctly represent the true state of the several matters therein contained. The directors who "Attest," however, claim they only signed as witnesses and did not know the contents. The words "Correct, Attest" are written just below the signature of the cashier who verified the document and just above the signatures of the directors. The words "Correct, Attest" mean not alone to bear witness, but to affirm to be true or genuine. The words are appropriately used for the affirmation of persons in their official capacity to attest the truth of a writing. *McGuire v. Church,* 49 Conn. 248.

The directors made declarations in writing to the bank examiner as to the condition of the plaintiff bank and declared, among other things, that all notes and securities were good and collectible, except as therein specified, and no exception was made as to the matters involved in this suit. The directors, who signed these declarations, testified that they did not know of the *Moses* and Walechka items at the time of signing. The *Moses* and Walechka notes, however, appeared on the bank records at the time the directors so signed and the bank examiner took them into consideration in checking the balances. It is therefore apparent that the directors must have found them and known of their existence at the time of making the declarations.

The directors further endeavored to excuse themselves on the ground that they were not familiar with the account books of the bank, but their oral testimony shows that they were sufficiently familiar with such books to inform themselves concerning the items in question. They also seek to avoid the consequences of their acts in making the false certificate by which they obtained renewals of the bond upon which suit

is brought on the ground of want of knowledge. But it seems upon the whole evidence of the directors who signed these certificates that they did know of the *Moses* and Walechka items at the time of signing. Moreover, they were bound to know that these certificates were true before they signed and delivered them, on the faith of which they obtained renewals of the bond.

It is idle for the officers of plaintiff to say, in face of all the evidence orally given as well as documentary, that they were without knowledge of the material facts in the case respecting the dealings of *Moses* and Walechka with plaintiff.

The whole situation was plain; they had but to open their eyes and see. It was their duty to know, and they cannot now, in the face of the record, say they did not know. *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 98 N. W. 923; *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932; *Keller v. Schmidt,* 104 Wis. 596, 80 N. W. 935; *Zunker v. Kuehn,* 113 Wis. 421, 88 N. W. 605; *Mannel v. Shafer,* 135 Wis. 241, 115 N. W. 801; *Krause v. Busacker,* 105 Wis. 350, 81 N. W. 406; *First Nat. Bank v. Hackett,* 159 Wis. 113, 149 N. W. 703. Public policy as well as private rights require that officers of banks should be held to a strict accountability in the discharge of their official duties.

Some authorities are cited by counsel for plaintiff, but in our view of the case they do not reach the questions involved in the instant case. They are clearly distinguishable and we shall take no time discussing them. We hold that no case of larceny or embezzlement was shown and therefore no case was made by the plaintiff.

Other defenses need not be treated.

*By the Court.*—The judgment is reversed, and the action remanded with instructions to dismiss the complaint on the merits, with costs.