PICKARD and wife, Respondents, vs. FARMERS & MER-
CHANTS BANK OF RICHLAND CENTER, WISCONSIN,
imp., Appellant.

*February 11—March 9, 1920.*

*Reformation: Mistake in amount of notes and mortgages: Failure
to read instruments: Evidence of mistake.*

1. In cases of reformation of written instruments because of mis-
take, the evidence must clearly show the terms of the oral
agreement and that the writings sought to be so reformed do
not express such oral agreement but a different one.
2. Where plaintiff applied for a loan from the defendant bank
for $11,500, the unpaid portion of the purchase price of land
bought by him, but the cashier erroneously inserted $12,500
in the notes and mortgage given for the loan, and the bank
paid such amount to the seller, plaintiff is entitled to reforma-
tion and adjustment of the rights of the parties in accordance
therewith, though he did not read the notes and mortgage
given for the loan to ascertain whether they correctly ex-
pressed the oral agreement, but relied upon the cashier.
ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Rich-
land county: GEORGE CLEMENTSON, Circuit Judge. *Af-
firmed.*

The action was brought by the plaintiffs to reform a real-
estate mortgage and notes secured thereby.

On August 6, 1917, the plaintiffs and C. J. Duren came
to the defendant bank and at their request the cashier, Mr.
Fiske, drew up a land contract by which Duren contracted

for the sale of his farm to *Pickard* for $12,500. *Pickard* was to pay $1,000 down on that day, the balance the following February. The same day *Pickard* borrowed $2,315 from the bank, paid Duren the $1,000, and paid a prior mortgage on his own farm with the balance. Mr. Fiske drew the land contracts for the parties, and *Pickard* inquired about getting a loan from the bank for the remaining $11,500 of the purchase price to be paid to Duren the following February. Mr. Fiske told him that he and other officers of the bank would examine the two farms offered as security for the loan. In the winter this inspection was made by Mr. Fiske and two directors of the bank, and they were satisfied that the security offered was sufficient for the $11,500 loan. On February 2, 1918, *Pickard* came to the bank to perfect the sale and have the deed made out and the mortgage and notes executed. A mortgage and accompanying notes were executed on the same date.

Plaintiff claims that when the interest on these notes was due he learned for the first time that the mortgage and notes were for $12,500 instead of the $11,500 agreed upon. Mr. Fiske claims that on February 2d *Pickard* asked for $12,500. This is denied by plaintiff, who asserts that he and his wife signed the mortgage and notes which Mr. Fiske had prepared for their signature without either reading them or having them read, and that he and his wife were in total ignorance that the notes were for a thousand dollars more than the sum which had been actually agreed upon as a loan from the bank. Both parties agree that *Pickard* at no time actually handled the money loaned by the bank; that the bank at the request of Duren and *Pickard* cleared up some incumbrances against Duren's land and paid the sum remaining to Duren.

The case was tried to the court. After hearing the evidence the court found that Mr. Fiske by mistake directed that the notes and mortgage to be given the bank for the loan be drawn for $12,500 instead of $11,500, the amount

agreed upon theretofore, and that plaintiffs were not negligent in signing them without first reading them or having the same read to them. The court also ordered that the mortgage signed by the plaintiffs in favor of the defendant bank be reformed so as to read that the same is security for $11,500 instead of $12,500, and that the defendant bank recover of the defendant C. J. Duren the sum of $1,000 with interest thereon from April 6, 1919, at six per cent., with costs. It was further adjudged that the note which matures last, which is secured by the mortgage signed by plaintiffs, shall be reduced in amount to the sum of $1,000, and that plaintiffs recover costs and disbursements. This is an appeal from such judgment.

For the appellant there was a brief by *Burnham & Black* of Richland Center, attorneys, and *Jones & Schubring* of Madison, of counsel, and oral argument by *O. D. Black* and *E. J. B. Schubring*.

For the respondents there was a brief by *Lincoln & Brewer* of Richland Center, and oral argument by *F. L. Brewer*.

SIEBECKER, J. In cases of reformation of written instruments for mistake the evidence must clearly show the terms of the oral agreement and that the writings sought to be so reformed do not express such oral agreement but a different one. *Harter v. Christoph,* 32 Wis. 245, and cases cited; *Green Bay & M. C. Co. v. Hewitt,* 62 Wis. 316, 21 N. W. 216, 22 N. W. 588.

There is no dispute in the evidence but that it was agreed between the plaintiff *Charles A. Pickard* and the officers of the bank, at the time the land contract was executed in August, 1917, that plaintiff applied for a loan from the bank for $11,500, if the bank officers upon inspection approved of the proffered mortgage security, and that the bank's officers thereafter informed plaintiff that the security was satisfactory and that he could have the loan. The bank

claims that this agreement was modified on February 2, 1918, to the effect of increasing the amount of the loan to $12,500. This the plaintiff denies. The conflicting evidence on this point sustains the trial court's conclusion that it clearly appeared that the amount of the loan originally agreed upon was not changed by the parties on February 2d to $12,500. The terms of the oral agreement were thus established, and it is understood that the notes and mortgage do not express it. The court's finding that the erroneous amount of the loan, namely $12,500, was inserted in the notes and mortgage through the error of the cashier, Mr. Fiske, is abundantly supported by the testimony. Upon this state of facts of the case plaintiffs are entitled to a reformation of the notes and mortgage unless they are precluded from such relief by their negligence in executing the notes and mortgage in the form presented to them without informing themselves of their actual contents. It appears that Mr. Fiske was requested and instructed by plaintiff to draw up the notes and mortgage for the loan. The facts and circumstances disclose that the plaintiff did what is common in a transaction of this nature, namely, that he and his wife relied upon their banker to draw up these documents correctly and that they expressed the agreements which were well understood between them, and that they relied upon him for their being correct as presented to them and that the contents of the writings contained the terms of the oral agreements. Under these facts and circumstances the omission of plaintiffs to read the notes and mortgage before signing them is sufficiently explained and excused, and the plaintiffs were justified in signing them without reading them to ascertain whether they correctly expressed the oral agreement for the loan. *Silbar v. Ryder,* 63 Wis. 106, 23 N. W. 106; *Wisconsin M. & F. Ins. Co. Bank v. Mann,* 100 Wis. 596, 76 N. W. 777; *Loyd v. Phillips,* 123 Wis. 627, 630, 101 N. W. 1092.

*By the Court.*—The judgment is affirmed.

ESCHWEILER, J. (*dissenting*). The oral agreement between the parties for a loan was in August, 1917. When they met again in the following February the plaintiffs relied entirely upon their supposition that the cashier of the bank would remember what took place in August and do not at such time mention that the loan is to be $11,500 rather than the $12,500, an amount which was a subject of conversation in the preceding August. This evidently was the plaintiffs' one transaction of such kind or magnitude. It is fair to assume that the bank had many similar transactions with others in the interim. That there was no actual fraud perpetrated by the cashier in having the instruments drawn with the incorrect amount, is clear beyond question. That he should not have the transaction of August clearly in mind and therefore make the mistake, is quite natural and excusable. The plaintiffs, however, in a transaction which was to them unusual and of much importance, did not do that which this court has repeatedly declared it is necessary and proper that he who binds himself by his signature to a written instrument is bound to do, viz. know its contents at the time of subscribing it in the absence of improper means by the other to prevent. There were absolutely no such means used in this case. There was no inquiry by the plaintiffs as to the contents of this document and the several notes. Plaintiffs were devoting their entire day to the transaction and had ample time and opportunity to look and read and thus have prevented what is probably a loss of $1,000.

To me it is clear that this loss should fall upon the more careless of the two parties concerned, and there was such a plain, inexcusable want of ordinary care on the part of plaintiffs as to place the loss upon them rather than upon the bank. *Dowagiac M. Co. v. Schroeder,* 108 Wis. 109, 111, 84 N. W. 14; *Standard M. Co. v. Slot,* 121 Wis. 14, 23, 98 N. W. 923; *Kruse v. Koelzer,* 124 Wis. 536, 541, 102 N. W. 1072; *Grant M. Co. v. Abbot,* 142 Wis. 279, 290, 124 N. W. 264; *Eland State Bank v. Mass. B. & I. Co.* 165 Wis. 493, 498, 162 N. W. 662.